Ms. Kashuk. Good morning, Your Honors. May it please the Court, I am Illinois Assistant Attorney General Gopi Kashuk on behalf of Respondent. In excusing Petitioner's default, the District Court misapplied Schlupf's demanding standard to find compelling evidence establishing Petitioner's guilt and undercutting Michael Stone's testimony. The evidence of Petitioner's guilt is both strong and reliable, Your Honors. Petitioner and his co-defendants expected to fight Gardner at the night of the murder. Petitioner himself had blamed Gardner for the earlier robbery that had occurred at Stone's apartment, and Petitioner and Carter spent the day trying to recover the stolen money that belonged to accountable under State law for Stone's actions. But what evidence is there that Jones and Stone had any common criminal design that night? What's that evidence? Well, Your Honors, we have evidence from Petitioner himself who says that after he and Carter stole the radio from Gardner's van, Stone paged Carter, and then Petitioner and Carter went to confront Gardner, and in so doing, they brought guns with them, and Stone waited in the alley with guns. So that evidence, Your Honor, shows that the Petitioner was accountable for Stone's shooting, regardless of whether he was accountable for Stone's shooting, Your Honor. Moreover, the evidence that Stone presented regarding him shooting in self-defense was completely unbelievable and contradicted by multiple witnesses. Well, that doesn't really matter. The fact remains that Stone took complete responsibility for this and said he was the only shooter. And so, unless this was tried on an accountability theory that has Cortez not shooting, but just present at the scene, you've got a problem. Well, Your Honor, Michael Stone says that he was the only shooter. However, we have multiple witnesses that say that multiple sets of gunshots were fired, including two distinct sets of gunshots. So was this tried on a multiple-shooter theory? Yes, Your Honor. The State has always maintained in both trials that all three co-defendants shot and fired at Gardner. This was not... So is your theory that Jones shot at Gardner and missed at that close range, or is your theory that his shots hit Gardner and Stone's shots didn't? What's your theory? Our theory, Your Honor, is that all three co-defendants shot. We don't know who had what weapon besides Stone telling us that he had a .380. And Stone, though, testifies that he's shooting from the alley, but the shell casings are in front of him. But he's saying... Look, in a case such as this one, in which you've got all this inconsistent eyewitness testimony, how... I mean, and you've got Stone, who says, I was the sole shooter. And consistently, he said that from the time of his arrest straight through his trial, I take it to this day, I'm really in a quandary. Your Honor, first, Your Honor, Stone testified in his own trial and took the very same position. And the jury, 12 people, did not believe him. They convicted him. They just disbelieved the self-defense part of it. They obviously believed that he was the shooter. No, Your Honor, because he presented two... There were two theories on the table. One that he shot intentionally, which is the first-degree murder. The second was that his first-degree murder conviction is completely negated by a justifiable self-defense theory. But the third is second-degree murder, Your Honor. And for second-degree murder, all he had to say and all the jury had to believe was that he thought, reasonably or not, that he was shooting in The fact that he was convicted of first-degree murder and not second-degree murder shows that the jury did not buy his testimony at all. And that makes sense because we have all these other witnesses that testified that there are multiple sets of gunshots, including a police officer who says there's multiple sets of gunshots. Stone keeps saying that he only fired three shots, Your Honor, but there were five shots from every other witness, pretty much, that says that... Well, pretty much. The eyewitness testimony is contradictory. Well, Your Honor, it's consistent on the point that more than three shots were fired. I think there was one witness that said there were three shots fired. So we have, as Pearson, who testifies that five shots were fired. We have Antonia, who testifies that four or five shots were fired. We have Gaston, who says that five shots were fired. We have Calmees, who testifies at the federal evidentiary hearing that only two shots were fired, but then he previously, he had told police that five shots were fired. We have Cheeks, Stone's own cousin, who says that four shots were fired to the grand jury and to police. And let's remember, Your Honors, that everything that these witnesses told police, including Stone's own family members, was this story, that there were multiple shots fired, more than the three that Stone fired. And also Stone fired from the alley, Your Honors, and the shell casings were found in front of him. And the undisputed evidence is that shell casings eject to the right and backwards and not to the front. And so unless Stone stepped out of the alley and ran up to Jones, or ran up to Gardner and shot him, the shell casings couldn't have come from him. And there's no indication of the- What evidence, what evidence was there that Jones possessed a gun that night, that he possessed a gun that night? Rena testified that Jones had a gun and shot. Antonio testified that Jones had a gun and shot. Gaston testified that Jones had a gun and shot. And Officer Taylor testifies that as Jones is fleeing from the scene, he sees what looks like an object in Jones's hand as he's running away. Jones, Cortez Jones is the one in the turquoise jacket, is that right? I'm sorry, Your Honors. Cortez Jones is the one in the turquoise jacket, is that- Yes, Your Honors. And that's undisputed, that that's what he was wearing that night. Multiple witnesses have said that. Was there any physical evidence recovered at the scene that pointed to a second gun? Was there any physical evidence? No, Your Honors, but the shell casings themselves could not be identified or eliminated as coming from the same firearm. So we don't know that all three shell casings actually did come from the same firearm. But otherwise, no, Your Honor, there's- sorry, I thought you were going to ask another question, Judge Roper, I apologize. But more so, going back to your question about who stopped Petitioner with a gun, we have these witnesses that see Petitioner with a gun- But see, here's my- I'm sorry, I keep interrupting you because, you see, there is a delay between what we each hear. I'm so sorry about that. But what Stone said, as I recall, is that he fired three times. And that is consistent with the physical evidence at the scene at which three .380 caliber shell casings were found. And, of course, the distance was consistent with the physical evidence of the wounds. Right? Well, no, Your Honor. Again, Stone is testifying that he fired from the alley between 12 and 20 feet away. The shell casings are in front of him, between 6 and 10 feet away. And at this point, it's undisputed that shell casings eject backwards and to the right. So there's no way that Stone's firing the gun from the alley could have created those shell casings that are found in front of him. And so, to the extent, it's either that Stone moved ahead and fired in much closer distance to Gardner, in which case, then maybe those shell casings could belong to him. But that's inconsistent with what he's telling us. And so, it's not, so Stone's testimony is simply not believable on that point. Moreover, his testimony has been inconsistent throughout the years, Your Honors. It's not consistent as the district petitioner believed. Well, the one consistent thing is that he says he was the sole shooter. That is consistent. I was the sole shooter. And it's not something, I mean, it came from the time of arrest forward. I mean, did he want to go to jail? Your Honor, Your Honor, his testimony, one, is that he is the sole shooter, but he's, his testimony is that he shot in self-defense. So whether he believed it reasonably or unreasonably, he's still protecting his brother and himself. He's not taking full responsibility. But moreover, Your Honor, his testimony regarding the three shots, that he only fired three shots, is not, has not been consistent. In his post-conviction petition, he actually says that he didn't know who was shooting when he first heard shots, because he didn't know that petitioner was armed or shooting. And that's at record sites 2306 to 07, and the trial transcript 89 to 94, Your Honors. So this is not a case where Stone actually has even been consistent on that point. And moreover, as to whether Gardner even had a gun, pulled a gun, Stone has been inconsistent. So he testifies that Gardner drew a gun before he shot. But when confronted with that very same, with the fact that no witness, including his own family members, said that Gardner had a gun, and that no gun had been recovered, Stone walks back from that to police. And he says, well no, I actually didn't see Gardner with a gun, but I, but he believed that Gardner had a gun in his pocket. And moreover, as to where, from where Gardner allegedly pulled the gun, Stone testifies at the federal hearing, on trial transcript 106, that Gardner pulled the gun from his front right side pocket area. But at his trial, Stone had testified, on record page 1950, that Gardner pulled the gun from his back. All that just calls into question the believability of his justification defense. It doesn't call into question his claim that he was the sole shooter, and his willingness to so testify on behalf of Cortez Jones. But Your Honor, he also has been inconsistent about whether there's a plan to harm Gardner at all, on the testimony regarding what happened beforehand, and what these three individuals were doing. Right, but how does that affect the power of his testimony that he was the sole shooter, which is what was excluded from, not excluded, but not presented at Cortez Jones's trial? Well, Your Honor, the problem is, is that his reliability as to the number of shots fired is contradicted. His reliability as to the .380 fired from the alley is contradicted. And his reliability as to Stone's gun is contradicted. So each of these pieces undercuts his reliability entirely. And so, to parse out and say, well, maybe just the fact that he was a sole shooter is, is credible, is, is simply not required. It should not have been done, Your Honor, because you also have his verdict. And he would have been impeached with the fact that a jury did not believe him, especially in the face of all these eyewitnesses that the jury did believe. Well, the jury didn't believe his justification defense and convicted him of first-degree murder. Right, but it also did not convict him. I mean, the issue of whether he was the sole shooter was not before the jury, was it? Whether he was the sole shooter was before the Stone and Carter jury, Your Honors, and he was convicted in Soakes Carter. So, so it's Carter's conviction that calls into question his testimony about being the sole shooter. I think both of their convictions, Your Honors, do because Stone is defending Carter with the fact that he's the sole shooter. Well, right, but his own conviction is not going to tell us anything one way or the other about whether that claim is believable. But Carter's conviction might. Yes, Carter's conviction does confirm that the jury believed that there were two shooters, or that Carter was accountable for Stone, and you can't extricate. Was his, was his liability tried as an accountability case? At Stone and Carter's trial, yes, there was an instruction on accountability presented. So, the state tried the case against Carter on dual theories, either he was a shooter, or if he wasn't a shooter, he was accountable? Yes. I've reserved some time for rebuttal, Your Honors, so unless you have more questions now, I'd like to reserve that time. Certainly, Ms. Cashin. Mr. Spivak. Good morning, Your Honors. If the court please, Barry Spivak for Cortez Jones. Judge Zagel said that in exchange for avoiding the possibility of inconsistent testimony regarding whether Gardner drew a weapon that night, a point barely alluded to in the Jones attorney's closing argument, the attorney gave up the ability to argue that Mr. Stone admitted to coming out of the alley with a .38 caliber weapon, that he alone shot Mr. Gardner because he thought that Mr. Gardner was going to shoot his brother, that he fired a weapon that matched the weapon that was used to kill Mr. Gardner, and that he did so without any from the attorney's perspective at that time, he could find no path to conclude that it fell within a concededly wide range of reasonable professional assistance. I'm going to ask you the very same question I asked our Assistant Attorney General. What evidence was there that Jones possessed a gun that night? What evidence? The only evidence that – well, let me do two things. One is there was evidence that he had a gun earlier that was then stored at some point. That was at the federal hearing. But I think what counsel is alluding to is the fact that there were at least a couple of witnesses who said they saw Jones shoot. So those would be people that said that Jones had a weapon that night. That would be basically four witnesses that she mentions, Antonio Phillips and his mother, Renee Phillips. Were they saying that he shot through his pocket? One of them, I think, indicated they weren't sure if he shot through his pocket or not. Both of them, what they said was that – and let's take Antonio first, Antonio Phillips, and why he's completely incredible. Antonio Phillips is the one who says that Cortez Jones shot from an inch away. I think under any circumstances, you don't need an expert to figure that an inch away is close range shooting. He apparently shot from an inch away. He also did not say anything about seeing stone come out of the alley and shoot. Same thing with his mother, Renee Phillips. She says that Cortez Jones was so close that I think he took the gun out of his pocket and had to step back in order to shoot, which also indicates he was only inches away. Even in the expert testimony that's mentioned in the Huddleston case that the state mentioned in its original brief, they say there would be like gunpowder or something if it was within two feet. And there's no And both of them don't even see stone come out of the alley and shoot, so they're completely incredible. I disagree with the fact that the guns may discharge, the bullets may, the casings may go backwards, but the fact of the matter is there's also evidence that stone was coming out of the alley when he was firing, and that's probably why the shells ended where they were. You also have the fact that he said it was a .38 caliber weapon right from the beginning. They were .38 caliber bullets. They were .38 caliber casings. There's no evidence of anything other than that. He was one witness to, I think Lanisha Pearson says he was leaning against a car, Mr. Gardner at the time. You would think that there were other bullets that would be lodged in the car. The physical evidence is that there were the three shots that Stone said he fired. The two witnesses I just mentioned, Antonio and Renee Phillips, there was a third witness that claimed that they saw Jones shoot, and that was Gaston. But what's interesting about Gaston, also he says the same thing about Jones having to like move away in order to extend his hand in order to shoot. What's interesting about Gaston is when Gaston was interviewed by the police that night or a few nights afterwards, he says no, it was Stone who came out of the alley who shot Mr. Gardner. Then he changes his testimony and now he reports his testimony, the same as Antonio and Renee Phillips, that all of a sudden it's not Stone, but basically it is Cortez Jones. Stone lives in the neighborhood. Stone knows everybody. Cortez is the outsider at the time. So now all of a sudden what it sounds like is everyone is trying to protect Stone by saying that it was Cortez Jones who fired the shot. One other thing I wanted to point out, Judge, and I think you might have raised it, with respect to whether a car was shot, keep in mind there was also the testimony from Cortez Jones' trial that Junior shot him. Junior shot him. She goes running from the scene. What's interesting about that is... Counsel, let me tell you what puzzles me about the focus of much of the argument so far. It seems to me that the focus is on how the three judges would have voted if we were jurors, which is not the right question even on direct appeal from a federal criminal conviction. We're supposed to be figuring out how this works under the AEDPA as applied to the collateral attack of a state conviction. Let me tell you my principle worry. We are engaged in second-guessing a deliberate decision by counsel who had heard Stone testify at the Stone and Carter trial. Deliberate decisions by counsel are not supposed to be second-guessed. It seems to me that what can be said for this decision is that at Carter's trial, the jury that had listened to Stone's testimony convicted Carter. That poses, at least for me, the question how one can say that no reasonable jury that listened to Stone's testimony could have convicted Carter, which is what the district judge said, sorry, could have convicted Jones, which is what the district judge said after a jury that listened to Stone's testimony convicted Carter. How can one reach that conclusion on a collateral attack? Remember, there was all this evidence that was not introduced in Jones' trial. In Jones' trial, there was not only the evidence about Stone saying that he came out of the alley and giving an explanation as to why he shot. As Judge Rovner said, one of the issues is whether the jury just didn't believe Gardner really saw a gun or didn't see a gun or not, which was irrelevant with respect to Mr. Jones. But also, at the Jones trial, it was not Lanesha Pearson who also said she saw Stone come out of the alley and shoot. It was not Felicia Anderson who said it. I may have phrased my question incorrectly because you're now back to the question, how should we vote as jurors? The question under Strickland is whether any reasonable professional would have put Stone on the stand at Jones' trial. And what concerns me is the fact that this lawyer attended the Stone-Carter trial and saw Carter get convicted, given Stone's testimony. Your position, therefore, seems to me to depend on the proposition that any reasonable lawyer would have repeated a defense strategy that he had already seen fail, rather than try a different strategy. Your Honor, it was his only defense, the fact that the man who shot the victim admitted to shooting the victim and had, in fact, said that this is why he shot the victim. That was his only defense. And to not present that defense, Your Honor, is ineffective assistance of counsel. There may have been, certainly, there's some inconsistencies, but the fact of the matter is he was not able to argue. He was not able to argue that Stone admitted coming out of the alley. Stone said he didn't because he thought Gardner was going to shoot his brother. That's why he didn't do it with Cortez Jones, which was something else that he said. I did not do it in agreement in advance with Cortez Jones. That testimony, there was no reason for the judge not to, pardon me, for the lawyer not to introduce that into evidence. Other than that, his client was doomed. So it was obviously, I think, exculpatory evidence that had to be introduced by any reasonable lawyer. Your Honors, I think that the forensics evidence with respect to the number of bullets, all these things, support the notion that it was all Mr. Stone. I think other people that maybe testified that it was Cortez Jones were very likely covering up and not wanting to admit that their neighbor, Stone, was the person involved. I think that the fact that they don't even mention Stone, some of them, even though the fact is that other people saw Stone come out of the alley and shoot, the fact that we have two .38 caliber bullets, we have three .38 caliber casings, the fact that Stone said that he fired a .38 caliber gun, this is actual innocence. And it would make no sense, no logical basis, not to call him as a witness. The lawyer, in fact, said he was going to because he said, well, I don't need to call him as a witness. We have his testimony, but they never even tried to introduce it. For those reasons, Your Honor, I think Judge Hagel's opinion should be affirmed. Thank you very much, Mr. Spivak. Anything further, Ms. Cashat? I'd like to start, Your Honor, with just pointing out that even if we put aside the actual innocence inquiry and you get to Strickland, the State Court's determination that counsel was not ineffective for failing to call Stone under AEDPA was not objectively unreasonable, Your Honors. The record for the State Court showed that trial counsel was aware of and had reviewed the record of the Stone and Carter trial and knew that Stone had been convicted. And also, counsel knew that Stone would be impeached with that prior conviction. That, enough, is a reasonable, strategic reason not to call Stone, particularly when two witnesses were called to point to another shooter. Moreover, Stone's testimony, as we've discussed, is not credible. And so, and Stone had, uh, Carter, the district had, I don't know how one can say here that Stone's testimony was not credible. The district court held an evidentiary hearing, and I gather you're not contesting the judge's decision to do so. The judge listened to Stone, and he found his testimony credible. And that was the basis on which the default was excused. How are we supposed to find that that finding by the district judge is clearly erroneous? You obviously disagree with it. But clearly erroneous? Well, Your Honor, even if Stone were credible, the district court failed in its analysis under the Schlepp standard, which requires a... Look, I could completely understand your saying, okay, the district judge held the hearing, he found this with Stone, he excused the default. That gets us to the Strickland issue. But the argument that you just made, and at least half the argument in your brief, challenges the district court's findings of fact at the hearing without showing that they're clearly erroneous. You just show, well, we had a contrary argument. Sure you did. But if the hearing was properly held, that's where we are. But even... May I have... Oh yeah, as long as we're talking, you can talk. Okay. But even if this court gets to Strickland, Your Honor, we still have to get through 2254D, which is that the state court's determination regarding counsel's strategy was unreasonable. And that's certainly not the case here, where he knew of Stone's testimony and a jury had rejected it. And the same goes for A, when counsel confirms at the hearing that he had observed Stone testify, found him not credible, and then decided not to call him. So, Your Honor, there is no evidence of actual innocence, but to the extent that you overcome the actual innocence gateway and reach the Strickland claim, the district cannot show that the state court's decision was objectively unreasonable or, under De Novo's view, that Strickland is met. We ask, therefore, that this court reverse the district court's judgment. Thank you, Your Honor. All right. Thank you very much. The case is taken under advisement.